IN THE UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| IN RE: | : | CHAPTER 7 |
| | : | |
| ELIZABETH CABRERA, | : | CASE NO. 22-52879-SMS |
| | : | |
| Debtor. | : | JUDGE SIGLER |
| | : | |
| | : | |
| FREEDOM MORTGAGE CORPORATION, | : | CONTESTED MATTER |
| | : | |
| Movant. | : | |
| | : | |
| v. | : | |
| ELIZABETH CABRERA, | : | |
| S. GREGORY HAYS, Trustee | : | |
| | : | |
| Respondents. | : | |
| | : | |

## <u>NOTICE OF HEARING</u>

**PLEASE TAKE NOTICE** that FREEDOM MORTGAGE CORPORATION has filed a Motion for Relief from Stay and related papers with the Court seeking an order modifying the automatic stay.

**PLEASE TAKE FURTHER NOTICE** that the Court will hold an initial telephonic hearing for announcements on the Motion at the following number: (toll-free number: 833-568-8864; meeting ID161 179 4270), at 10:00 a.m. on October 19, 2022 at the United States Bankruptcy Court, 75 Ted Turner Drive S.W., Courtroom 1201, Atlanta, Georgia 30303.

Matters that need to be heard further by the Court may be heard by telephone, by video conference, or in person, either on the date set forth above or on some other day, all as determined by the Court in connection with this initial telephonic hearing. Please review the "Hearing Information" tab on the judge's webpage, which can be found under the "Dial-in and Virtual Bankruptcy Hearing Information" link at the top of the webpage for this Court, www.ganb.uscourts.gov for more information.

Your rights may be affected by the court's ruling on these pleadings. You should read these pleadings carefully and discuss them with your attorney, if you have one in this bankruptcy case. (If you do not have an attorney, you may wish to consult one.) If you do not want the court to grant the relief sought in these pleadings or if you want the court to consider your views, then you and/or your attorney must attend the hearing. You may also file a written response to the pleading with the Clerk at the address stated below, but you are not required to do so. If you file a written response, you must attach a certificate stating when, how and on whom (including addresses) you served the response. Mail or deliver your response so that it is received by the Clerk at least two business days before the hearing. The address of the Clerk's Office is Clerk, 75 Ted Turner Drive S.W., Suite 1340, Atlanta, Georgia 30303. You must also mail a copy of your response to the undersigned at the address stated below.

If a hearing on the motion for relief from the automatic stay cannot be held within thirty (30) days, Movant waives the requirement for holding a preliminary hearing within thirty days of filing the motion and agrees to a hearing on the earliest possible date. Movant consents to the automatic stay remaining in effect until the Court orders otherwise.

Dated this:   09/21/2022  _____

/s/Michael J. McCormick  _____

Michael J. McCormick, GA BAR NO. 485749
Attorney for Movant
McCalla Raymer Leibert Pierce, LLC
1544 Old Alabama Road
Roswell, Georgia 30076
678-281-3918
Michael.McCormick@mccalla.com

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| IN RE: | ) | CHAPTER 7 |
| | ) | |
| ELIZABETH CABRERA, | ) | CASE NO. 22-52879-SMS |
| | ) | |
| Debtor. | ) | JUDGE SIGLER |
| | ) | |
| FREEDOM MORTGAGE CORPORATION, | ) | CONTESTED MATTER |
| | ) | |
| Movant. | ) | |
| | ) | |
| v. | ) | |
| ELIZABETH CABRERA, | ) | |
| S. GREGORY HAYS, Trustee | ) | |
| | ) | |
| Respondents. | | |

<u>MOTION FOR RELIEF FROM THE AUTOMATIC STAY</u>

COMES NOW Movant and shows this Court the following:

1.

This is a Motion under Section 362(d) of the Bankruptcy Code for relief from the automatic stay for all purposes allowed by law and the contract between the parties, including, but not limited to, the right to foreclose on certain real property.

2.

Movant is the servicer of a loan secured by certain real property in which Debtor claims an interest. A copy of the Mortgage is attached hereto and made a part hereof. Said real property is security for a promissory note, and is commonly known as 12373 NW 98 Ave, Hialeah Gardens, Florida 33018 (the "Property").

3.

Debtor is in default of the monthly installments pursuant to the terms of the Note.  As of September 14, 2022, Debtor is delinquent for fourteen (14) payments (August 2021 – September 2022); less a suspense balance of $30.72, for a total arrearage of $35,168.00, pursuant to the terms of the Loan Modification Agreement. A reinstatement breakdown is attached as Exhibit A.

4.

The unpaid principal balance, as of September 14, 2022, is $215,004.58, and interest is due thereon in accordance with the Loan Modification Agreement.  The current amount of unpaid interest on Movant's loan good through October 14, 2022 is $9,557.39 and the total estimated payoff is $239,678.72.

5.

Because of Debtor's default and clear inability to make all required payments, Movant is not adequately protected and shows that there is cause for relief from the automatic stay.  In addition, it does not appear Debtor is living in the Property.

6.

Because the Mortgage so provides, Movant is entitled to its attorney's fees.

7.

Miami Dade property appraiser values the Property at $381,724.00. A copy of the valuation is attached as Exhibit B.  Upon information and belief, Movant is not aware of any other liens against the Property.

8.

Movant requests it be permitted to contact the Debtor via telephone or written correspondence regarding potential loss mitigation options pursuant to applicable non-

bankruptcy law, including loan modifications, deeds in lieu of foreclosure, short sales and/or any other potential loan workouts or loss mitigation agreements.

9.

IMPORTANT NOTICE: Freedom Mortgage Corporation ("Freedom") is firmly committed to helping its borrowers who are experiencing a hardship. Depending on the circumstances of your case, Freedom may be amenable to consensual resolution of this matter, with Court approval. Potential options for resolution may include, among other things, temporary forbearance of payments, payment restructuring and/or adjustment of your payment amount. If you (or, if applicable, any co-debtors) have experienced a hardship, please contact us (or have your counsel contact us, if you are represented) promptly to discuss possible options.

WHEREFORE, Movant prays (1) for an Order modifying the automatic stay, authorizing Movant, its successors and assigns, to proceed with the exercise of its private power of sale and to foreclose under its Mortgage and appropriate state statutes; (2) for an award of reasonable attorney's fees; (3) that Movant, at its option, be permitted to contact the Debtor via telephone or written correspondence regarding potential loss mitigation options pursuant to applicable non-bankruptcy law, including loan modifications, deeds in lieu of foreclosure, short sales and/or any other potential loan workouts or loss mitigation agreements; (4) for waiver of Bankruptcy Rule 4001 (a)(3); and (5) for such other and further relief as is just and equitable.

*/s/Michael J. McCormick*
Michael J. McCormick, Georgia BAR NO. 485749
Attorney for Movant
McCalla Raymer Leibert Pierce, LLC
1544 Old Alabama Road
Roswell, Georgia 30076
678-281-3918
Michael.McCormick@mccalla.com

BANKRUPTCY CASE NO. 22-52879-SMS

CHAPTER 7

CERTIFICATE OF SERVICE

I, Michael J. McCormick, of McCalla Raymer Leibert Pierce, LLC, 1544 Old Alabama Road, Roswell, Georgia 30076-2102, certify:

That on the date below, I served a copy of the within NOTICE OF ASSIGNMENT OF HEARING, together with the MOTION FOR RELIEF FROM THE AUTOMATIC STAY filed in this bankruptcy matter on the following parties at the addresses shown, by regular United States Mail, postage prepaid, unless another manner of service is expressly indicated:

Elizabeth Cabrera
4420 Peachtree Road NE, #2233
Atlanta, GA 30319

Rushi D. Patel                          *(served via ECF notification)*
Deighan Law LLC
1995 N Park Pl SE
Suite 565
Atlanta, GA 30339

S. Gregory Hays, Trustee                *(served via ECF notification)*
Hays Financial Consulting, LLC
Suite 555
2964 Peachtree Road
Atlanta, GA 30305

I CERTIFY UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT.

Executed on:    09/21/2022    By:    */s/Michael J. McCormick*
                (date)                Michael J. McCormick Georgia BAR NO. 485749
                                      Attorney for Movant

ORIGINAL

MIN: ███████

# NOTE

Loan Number ███████

FHA Case No: 095-4438129-703

OCTOBER 20, 2017          FOOTHILL RANCH          CALIFORNIA
[Date]                    [City]                  [State]

12373 NW 98 AVE, HIALEAH GARDENS, FLORIDA 33018
[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ 306,348.00          (this amount is called "Principal"), plus interest to the order of the Lender. The Lender is  LOANDEPOT.COM, LLC,

I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of      4.000 %.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

## 3. PAYMENTS

### (A) Time and Place of Payments

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the  1st   day of each month beginning on  DECEMBER 1  , 2017          . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest and other items in the order described in the Security Instrument before Principal. If, on      . NOVEMBER 1, 2047   , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at  P.O. BOX 11733, NEWARK, NEW JERSEY 07101-4733
                                    or at a different place if required by the Note Holder.

### (B) Amount of Monthly Payments

My monthly payment will be in the amount of U.S. $ 1,462.55          .

## 4. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to any accrued and unpaid interest on the Prepayment amount before applying my

---

FLORIDA FHA FIXED RATE NOTE
FLFHA.NTE  06/14/16                        Page 1 of 4                        *DocMagic eForms*
                                                                              *www.docmagic.com*



Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

## 5. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 6. BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charge for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of 15 calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 4.000 % of the overdue payment of Principal and Interest (P&I). I will pay this late charge promptly but only once on each late payment.

### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

### (C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

### (D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

### (E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 7. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 8. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

DocMagic eForms
www.docmagic.com



## 9. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 10. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

## 11. DOCUMENTARY TAX

The state documentary tax due on this Note has been paid on the mortgage securing this indebtedness.

**[REMAINDER OF THIS PAGE INTENTIONALLY LEFT BLANK]**

FLORIDA FHA FIXED RATE NOTE
FLFHA.NTE  06/14/16                                      Page 3 of 4                        DocMagic *eForms*
www.docmagic.com



WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)
MADELAINE  DIAZ                  -Borrower

_____ (Seal)
ELIZABETH  CABRERA               -Borrower

_____ (Seal)
                                 -Borrower

_____ (Seal)
                                 -Borrower

_____ (Seal)
                                 -Borrower

_____ (Seal)
                                 -Borrower

Loan Originator: DIANA  APONTE, NMLSR ID ██████
Loan Originator Organization: D & F LENDING CORP, NMLSR ID ██████

*[Sign Original Only]*

PAY TO THE ORDER OF

Freedom Mortgage Corporation

WITHOUT RECOURSE
LOANDEPOT.COM, LLC

BY

Thomas Hutchinson
VP, Operations

FLORIDA FHA FIXED RATE NOTE
FLFHA.NTE  06/14/16                    Page 4 of 4

DocMagic *eForms*
www.docmagic.com

Pay to the order of _____ 20 __

without recourse this ____ day of ____

Freedom Mortgage Corporation

Maria Gallucci
Corporate Secretary

CFN: 20170598432 BOOK 30729 PAGE 2890
DATE:10/24/2017 10:16:57 AM
MTG DOC 1,072.40
INTANGIBLE 612.70
HARVEY RUVIN, CLERK OF COURT, MIA-DADE CTY

This Instrument Prepared By:

Kwannah Clifton

After Recording Return To:
LOANDEPOT.COM, LLC ATTN: DOC CONTROL
25500 COMMERCENTRE DR, SUITE 100
LAKE FOREST, CALIFORNIA 92630
Loan Number: ▉▉▉▉▉▉▉▉

——————————————————————————— [Space Above This Line For Recording Data] ———————

# MORTGAGE

FHA Case No: ▉▉▉▉▉▉▉▉

MIN: ▉▉▉▉▉▉▉▉▉▉                                        **MERS Phone: 888-679-6377**

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 10, 12, 17, 19 and 20. Certain rules regarding the usage of words used in this document are also provided in Section 15.

**(A) "Security Instrument"** means this document, which is dated        OCTOBER 20, 2017        , together with all Riders to this document. /
**(B) "Borrower"** is  MADELAINE DIAZ AND ELIZABETH CABRERA;

Borrower is the mortgagor under this Security Instrument.
**(C) "MERS"** is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the mortgagee under this Security Instrument.** MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.
**(D) "Lender"** is LOANDEPOT.COM, LLC

Lender is a                LIMITED LIABILITY COMPANY                organized
and existing under the laws of                DELAWARE
Lender's address is 26642 TOWNE CENTRE DRIVE, FOOTHILL RANCH, CALIFORNIA 92610

DocMagic *eForms*
www.docmagic.com

This Instrument Prepared By:

Kwannah Clifton

After Recording Return To:
LOANDEPOT.COM, LLC ATTN: DOC CONTROL
25500 COMMERCENTRE DR, SUITE 100
LAKE FOREST, CALIFORNIA 92630
Loan Number: ▮▮▮▮▮▮▮

——————————————————————————— [Space Above This Line For Recording Data] ———————

FHA Case No:
▮▮▮▮▮▮▮

# MORGAGE

MIN: ▮▮▮▮▮▮▮▮▮▮

**MERS Phone: 888-679-6377**

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 10, 12, 17, 19 and 20. Certain rules regarding the usage of words used in this document are also provided in Section 15.

**(A)  "Security Instrument"** means this document, which is dated          OCTOBER 20, 2017          , together with all Riders to this document.
**(B)  "Borrower"** is  MADELAINE DIAZ AND ELIZABETH CABRERA;

Borrower is the mortgagor under this Security Instrument.
**(C)  "MERS"** is  Mortgage Electronic Registration Systems, Inc.  MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns.  **MERS is the mortgagee under this Security Instrument.**  MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.
**(D)  "Lender"** is  LOANDEPOT.COM, LLC

Lender is a                          LIMITED LIABILITY COMPANY                          organized
and existing under the laws of                                DELAWARE
Lender's address is 26642 TOWNE CENTRE DRIVE, FOOTHILL RANCH, CALIFORNIA 92610

DocMagic *eForms*
www.docmagic.com

**(E)** **"Note"** means the promissory note signed by Borrower and dated    OCTOBER 20, 2017
The Note states that Borrower owes Lender    THREE HUNDRED SIX THOUSAND THREE HUNDRED
FORTY-EIGHT AND 00/100                    Dollars (U.S. $  306,348.00            )
plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later
than    NOVEMBER 1, 2047              .
**(F)** **"Property"** means the property that is described below under the heading "Transfer of Rights in the Property."
**(G)** **"Loan"** means the debt evidenced by the Note, plus interest, late charges due under the Note, and all sums due
under this Security Instrument, plus interest.
**(H)** **"Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following Riders are
to be executed by Borrower [check box as applicable]:

☐ Adjustable Rate Rider        ☒ Planned Unit Development Rider
☐ Condominium Rider            ☐ Other(s) [specify]

**(I)** **"Applicable Law"** means all controlling applicable federal, state and local statutes, regulations, ordinances and
administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial
opinions.
**(J)** **"Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other charges
that are imposed on Borrower or the Property by a condominium association, homeowners association or similar
organization.
**(K)** **"Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check, draft,
or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or
magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term
includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by
telephone, wire transfers, and automated clearinghouse transfers.
**(L)** **"Escrow Items"** means those items that are described in Section 3.
**(M)** **"Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any
third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or
destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in
lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.
**(N)** **"Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan.
**(O)** **"Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note,
plus (ii) any amounts under Section 3 of this Security Instrument.
**(P)** **"RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing
regulation, Regulation X (12 C.F.R. Part 1024), as they might be amended from time to time, or any additional or
successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA"
refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the
Loan does not qualify as a "federally related mortgage loan" under RESPA.
**(Q)** **"Secretary"** means the Secretary of the United States Department of Housing and Urban Development or his
designee.

FLORIDA FHA MORTGAGE - MERS
FLMTGZ2.FHA  06/08/17                    Page 2 of 14                    DocMagic *eForms*
www.docmagic.com

**(R)  "Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

## TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, with power of sale, the following described property located in the

|             | COUNTY                           | of  | MIAMI-DADE                     | : |
|-------------|----------------------------------|-----|--------------------------------|---|
|             | [Type of Recording Jurisdiction] |     | [Name of Recording Jurisdiction] |   |

SEE LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF AS EXHIBIT "A".
A.P.N.: ████████

which currently has the address of        12373 NW 98 AVE
                                                            [Street]

        HIALEAH GARDENS        , Florida        33018        ("Property Address"):
        [City]                                              [Zip Code]

    TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

    BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

    THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

FLORIDA FHA MORTGAGE - MERS
FLMTGZ2.FHA  06/08/17        Page 3 of 14        DocMagic eForms
www.docmagic.com

**UNIFORM COVENANTS.** Borrower and Lender covenant and agree as follows:

**1.  Payment of Principal, Interest, Escrow Items, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 14. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2.  Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority:

First, to the Mortgage Insurance premiums to be paid by Lender to the Secretary or the monthly charge by the Secretary instead of the monthly mortgage insurance premiums;

Second, to any taxes, special assessments, leasehold payments or ground rents, and fire, flood and other hazard insurance premiums, as required;

Third, to interest due under the Note;

Fourth, to amortization of the principal of the Note; and, Fifth, to late charges due under the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount of the Periodic Payments.

**3.  Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums to be paid by Lender to the Secretary or the monthly charge by the Secretary instead of the monthly Mortgage Insurance premiums. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly,

when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 14 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

FLORIDA FHA MORTGAGE - MERS
FLMTGZ2.FHA  06/08/17    Page 5 of 14    DocMagic eForms
www.docmagic.com

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice

is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

   **6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender determines that this requirement shall cause undue hardship for the Borrower or unless extenuating circumstances exist which are beyond Borrower's control.

   **7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

   If condemnation proceeds are paid in connection with the taking of the property, Lender shall apply such proceeds to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts, and then to payment of principal. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments or change the amount of such payments.

   Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

   **8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

   **9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or

FLORIDA FHA MORTGAGE - MERS
FLMTGZ2.FHA  06/08/17                                    Page 7 of 14                                    DocMagic *eForms*
www.docmagic.com

other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property

---

FLORIDA FHA MORTGAGE - MERS
FLMTGZ2.FHA  06/08/17                          Page 8 of 14                    DocMagic *eForms*
                                                                              www.docmagic.com

or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 18, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**11. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**12. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co- signer's consent.

Subject to the provisions of Section 17, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 19) and benefit the successors and assigns of Lender.

**13. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. Lender may collect fees and charges authorized by the Secretary. Lender may not charge fees that are expressly prohibited by this Security Instrument, or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment with no changes in the due date or in the monthly payment amount unless the Note holder agrees in writing to those changes. Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**14. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other

means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**15. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located.

All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**16. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**17. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 17, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 14 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**18. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to reinstatement of a mortgage. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. However, Lender is not required to reinstate if: (i) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two years immediately preceding the commencement of a current foreclosure proceedings; (ii) reinstatement will preclude foreclosure on different grounds in the future, or (iii) reinstatement will

FLORIDA FHA MORTGAGE - MERS
FLMTGZ2.FHA   06/08/17                                    Page 10 of 14                    DocMagic *eForms*
                                                                                         www.docmagic.com

adversely affect the priority of the lien created by this Security Instrument. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 17.

**19. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

**20. Borrower Not Third-Party Beneficiary to Contract of Insurance.** Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower acknowledges and agrees that the Borrower is not a third party beneficiary to the contract of insurance between the Secretary and Lender, nor is Borrower entitled to enforce any agreement between Lender and the Secretary, unless explicitly authorized to do so by Applicable Law.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that

FLORIDA FHA MORTGAGE - MERS
FLMTGZ2.FHA  06/08/17                          Page 11 of 14                          *DocMagic eForms*
www.docmagic.com

any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

**NON-UNIFORM COVENANTS.** Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument, foreclosure by judicial proceeding and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and foreclosure. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.**

**23. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

**24. Attorneys' Fees.** As used in this Security Instrument and the Note, attorneys' fees shall include those awarded by an appellate court and any attorneys' fees incurred in a bankruptcy proceeding.

**25. Jury Trial Waiver.** The Borrower hereby waives any right to a trial by jury in any action, proceeding, claim, or counterclaim, whether in contract or tort, at law or in equity, arising out of or in any way related to this Security Instrument or the Note.

**[REMAINDER OF THIS PAGE INTENTIONALLY LEFT BLANK]**



BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

_____ (Seal)
MADELAINE DIAZ                -Borrower
3085 SW 79 AVE, MIAMI, FL 33155

_____ (Seal)
ELIZABETH CABRERA             -Borrower
3085 SW 79 AVE, MIAMI, FL 33155

_____ (Seal)
                              -Borrower

_____ (Seal)
                              -Borrower

_____ (Seal)
                              -Borrower

_____ (Seal)
                              -Borrower

Witness:

Patricia O Espinosa

Witness:

Maria C Castells

FLORIDA FHA MORTGAGE - MERS
FLMTGZ2.FHA  06/08/17

Page 13 of 14

DocMagic eForms
www.docmagic.com

———————————————— [Space Below This Line For Acknowledgment] ————————————————

STATE OF ___FLORIDA_____

COUNTY OF ___MIAMI-DADE_____

The foregoing instrument was acknowledged before me this _20 Day of October, 2017_
                                                                    (date)

by ___MADELAINE DIAZ AND ELIZABETH CABRERA_____

_____,

                              (name of person acknowledging)

who is personally known to me or who has produced _DRIVERS License_____
                                                        (type of identification)

as identification.

_____
(Signature)

_____
(Notary's Name printed, typed or stamped)

Notary Public State of Florida
Maria C Castells
My Commission FF 978978
Expires 06/08/2020

(Seal)

_Notary_____
Title or Rank

_FF 978978_____
Serial Number, if any

Loan Originator: DIANA  APONTE, NMLSR ID ██████
Loan Originator Organization: D & F LENDING CORP, NMLSR ID ██████

DocMagic *eForms*
www.docmagic.com

Loan Number: █████████

Date: OCTOBER 20, 2017

Property Address:  12373 NW 98 AVE
                   HIALEAH GARDENS, FLORIDA 33018

## EXHIBIT "A"

## LEGAL DESCRIPTION

Lot 46, Block 2, of BEL AIR SUBDIVISION, according to the Plat thereof, as recorded in Plat Book 142, Page 100, of the Public Records of Miami-Dade County, Florida.

A.P.N. # ████████████████

*DocMagic eForms*
www.docmagic.com

# PLANNED UNIT DEVELOPMENT RIDER

Loan Number: ▮

FHA Case No.
▮

THIS PLANNED UNIT DEVELOPMENT RIDER is made this      20th        day of
OCTOBER, 2017          , and is incorporated into and shall be deemed to amend and
supplement the Mortgage, Deed of Trust or Security Deed ("Security Instrument") of the same date given
by the undersigned ("Borrower") to secure Borrower's Note ("Note") to   LOANDEPOT.COM, LLC,

"Lender" of the same date and covering the Property described in the Security Instrument and located at:

12373 NW 98 AVE, HIALEAH GARDENS, FLORIDA 33018
[Property Address]

The Property Address is a part of a planned unit development ("PUD") known as:

BEL AIR
[Name of Planned Unit Development]

**PUD COVENANTS.** In addition to the covenants and agreements made in the Security Instrument,
Borrower and Lender further covenant and agree as follows:

A.     So long as the Owners Association (or equivalent entity holding title to common areas and facilities),
acting as trustee for the homeowners, maintains, with a generally accepted insurance carrier, a "master"
or "blanket" policy insuring the property located in the PUD, including all improvements now existing
or hereafter erected on the mortgaged premises, and such policy is satisfactory to Lender and provides
insurance coverage in the amounts, for the periods, and against the hazards Lender requires, including
fire and other hazards included within the term "extended coverage," and loss by flood, to the extent
required by the Secretary, then:

     (i)   Lender waives the provision in Paragraph 3 of this Security Instrument for the monthly payment
to Lender of one-twelfth of the yearly premium installments for hazard insurance on the Property,
and

     (ii)  Borrower's obligation under Paragraph 5 of this Security Instrument to maintain hazard insurance
coverage on the Property is deemed satisfied to the extent that the required coverage is provided
by the Owners Association policy.

Borrower shall give Lender prompt notice of any lapse in required hazard insurance coverage and of
any loss occurring from a hazard. In the event of a distribution of hazard insurance proceeds in lieu of
restoration or repair following a loss to the Property or to common areas and facilities of the PUD, any
proceeds payable to Borrower are hereby assigned and shall be paid to Lender for application to the
sums secured by this Security Instrument, with any excess paid to the entity legally entitled thereto.

Page 1 of 2

*DocMagic eForms*
*www.docmagic.com*

B.    Borrower promises to pay all dues and assessments imposed pursuant to the legal instruments creating and governing the PUD.

C.    If Borrower does not pay PUD dues and assessments when due, then Lender may pay them. Any amounts disbursed by Lender under this paragraph C shall become additional debt of Borrower secured by the Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this PUD Rider.

_____ (Seal)
MADELAINE DIAZ            -Borrower

_____ (Seal)
ELIZABETH CABRERA         -Borrower

_____ (Seal)
                          -Borrower

_____ (Seal)
                          -Borrower

_____ (Seal)
                          -Borrower

_____ (Seal)
                          -Borrower

MULTISTATE PUD RIDER
USFHAP.RDR  09/01/14                    Page 2 of 2                    DocMagic eForms
                                                                      www.docmagic.com

CFN: 20220658687 BOOK 33346 PAGE 4533
DATE:08/19/2022  04:28:08 PM
HARVEY RUVIN, CLERK OF COURT, MIA-DADE CTY

**Record and Return To:**
Freedom Mortgage Corporation
Assignment of Mortgage Department
20 Lake Center Drive
Marlton NJ 08053

**Prepared By:**
Freedom Mortgage Corporation
**Priyanka Renukaprasanna(IN)**
20 Lake Center Drive
Marlton NJ 08053
(855) 690-5900
lienrelease@freedommortgage.com

Loan #: ███████
MIN: ███████
MERS Phone #: **(888) 679-6377**

---

## ASSIGNMENT OF MORTGAGE

For good and valuable consideration, the sufficiency of which is hereby acknowledged, **Mortgage Electronic Registration Systems, Inc., as mortgagee as nominee for LOANDEPOT.COM, LLC, its successors and assigns , P.O. Box 2026, Flint, MI 48501-2026 (888) 679-6377,** by these presents does convey, assign, transfer and set over to: **Freedom Mortgage Corporation, 907 Pleasant Valley Ave Ste3, Mount Laurel, NJ 08054,** the described Mortgage, with all interest, all liens, and any rights due or to become due thereon. Said Mortgage for **$306348.00** is recorded in the State of **FLORIDA**, County of **Miami-Dade** Official Records, dated **10/20/2017** and recorded on **10/24/2017**, as Instrument No. **20170598432** in Book No. **30729**, at Page No. **2890**
Original Mortgagor: **MADELAINE DIAZ AND ELIZABETH CABRERA;**
Original Mortgagee: **Mortgage Electronic Registration Systems, Inc., as mortgagee as nominee for LOANDEPOT.COM, LLC, its successors and assigns**
Property Address: **12373 NW 98 AVE HIALEAH GARDENS, FL 33018**
Date: **08/19/2022.**

**Mortgage Electronic Registration Systems, Inc., as mortgagee as nominee for LOANDEPOT.COM, LLC, its successors and assigns**



By: _____
Name: **Roseann McKenry**
Title: **Assistant Secretary**

STATE OF **New Jersey**
COUNTY OF **BURLINGTON** } s.s.

On **08/19/2022**, before me, **Brenda Rostrom**, Notary Public, personally appeared **Roseann McKenry, Assistant Secretary** of **Mortgage Electronic Registration Systems, Inc., as mortgagee as nominee for LOANDEPOT.COM, LLC, its successors and assigns** , personally known to me (or proved to me the basis of satisfactory evidence) to be the person whose name is subscribed to the within instrument and acknowledged to me that she/he/they executed the same in her/his/their authorized capacity(ies), and that by her/his/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

Witness my hand and official seal.

_Brenda Rostrom_
_____
Notary Public: **Brenda Rostrom**
My Commission Expires: **01/29/2027**
Commission #: **2283515**

CFN: 20200480086 BOOK 32071 PAGE 2421
DATE:08/26/2020  02:30:33 PM
HARVEY RUVIN, CLERK OF COURT, MIA-DADE CTY

After Recording Return To:                       This Document Prepared By:
RUTH RUHL, P.C.                                  Ruth Ruhl, Esquire
Attn:  Recording Department                      12700 Park Central Drive, Suite 850
12700 Park Central Drive, Suite 850              Dallas, TX 75251
Dallas, Texas 75251

_____[Space Above This Line For Recording Data]_____

Loan No.: ▮▮▮▮▮                                  FHA Case No.: ▮▮▮▮▮
Investor Loan No.: ▮▮▮▮▮
MERS No.: ▮▮▮▮▮                                              MERS Phone: 1-888-679-6377

# LOAN MODIFICATION AGREEMENT
### (Providing for Fixed Interest Rate)

This Loan Modification Agreement ("Agreement"), made this      6th      day of    July, 2020          ,
between  MADELAINE DIAZ and ELIZABETH CABRERA

("Borrower")

whose address is  12373 NW 98 AVE, Hialeah Gardens, Florida 33018
and Freedom Mortgage Corporation

("Lender"),

whose address is  10500 Kincaid Dr, Suite 300, Fishers, Indiana 46037
and Mortgage Electronic Registration Systems, Inc.                          ("MERS") ("Mortgagee"),
amends and supplements (1) the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") dated
October 20th, 2017        , granted or assigned to Mortgage Electronic Registration Systems, Inc. as mortgagee of
record (solely as nominee for Lender and Lender's successors and assigns), P.O. Box 2026, Flint, Michigan 48501-
2026 and recorded on October 24th, 2017       , in Mortgage Book 30729           , Page 2890         ,
Instrument No. 20170598432            , Official Records of  Miami-Dade            County, Florida         ,
and (2) the Note, bearing the same date as, and secured by, the Security Instrument, which covers the real and
personal property described in said Security Instrument and defined therein as the "Property," located at
12373 NW 98 AVE, Hialeah Gardens, Florida 33018

"The portion of the Unpaid Principal Balance which is subject to documentary stamp and intangible
tax is $ 0.00 ."

FLORIDA LOAN MODIFICATION AGREEMENT                                              Page 1 of 7
(FNMA Modified Form 3179 1/01 (rev. 06/18))

**After Recording Return To:**
RUTH RUHL, P.C.
Attn: Recording Department
12700 Park Central Drive, Suite 850
Dallas, Texas 75251

**This Document Prepared By:**
Ruth Ruhl, Esquire
12700 Park Central Drive, Suite 850
Dallas, TX 75251

_____[Space Above This Line For Recording Data]_____

Loan No.: ▉▉▉▉
Investor Loan No.: ▉▉▉▉
MERS No.: ▉▉▉▉▉▉▉

FHA Case No.: ▉▉▉▉▉▉

MERS Phone: 1-888-679-6377

# LOAN MODIFICATION AGREEMENT
### (Providing for Fixed Interest Rate)

This Loan Modification Agreement ("Agreement"), made this    6th    day of    July, 2020            ,
between MADELAINE DIAZ and ELIZABETH CABRERA

("Borrower")

whose address is  12373 NW 98 AVE, Hialeah Gardens, Florida 33018
and Freedom Mortgage Corporation

("Lender"),

whose address is  10500 Kincaid Dr, Suite 300, Fishers, Indiana 46037
and Mortgage Electronic Registration Systems, Inc.                    ("MERS") ("Mortgagee"),
amends and supplements (1) the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") dated
October 20th, 2017        , granted or assigned to Mortgage Electronic Registration Systems, Inc. as mortgagee of
record (solely as nominee for Lender and Lender's successors and assigns), P.O. Box 2026, Flint, Michigan 48501-
2026 and recorded on  October 24th, 2017        , in Mortgage Book 30729            , Page 2890                ,
Instrument No. 20170598432        , Official Records of  Miami-Dade            County, Florida
and (2) the Note, bearing the same date as, and secured by, the Security Instrument, which covers the real and
personal property described in said Security Instrument and defined therein as the "Property," located at
12373 NW 98 AVE, Hialeah Gardens, Florida 33018

**"The portion of the Unpaid Principal Balance which is subject to documentary stamp and intangible**
 **tax is $ 0.00 ."**

_____

**FLORIDA LOAN MODIFICATION AGREEMENT**                                              **Page 1 of 7**
(FNMA Modified Form 3179 1/01 (rev. 06/18))

Loan No. ███████

the real property described being set forth as follows:
SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF.

In consideration of the mutual promises and agreements exchanged, the parties hereto agree as follows (notwithstanding anything to the contrary contained in the Note or Security Instrument):

1.      As of September 1st, 2020      , the amount payable under the Note and the Security Instrument (the "Unpaid Principal Balance") is U.S. $ 218,850.86          , consisting of the unpaid amount(s) loaned to Borrower by Lender plus any interest and other amounts capitalized.

2.      Borrower promises to pay the Unpaid Principal Balance, plus interest, to the order of Lender.  Interest will be charged on the Unpaid Principal Balance at the yearly rate of  3.500    %, from August 1st, 2020      .  Borrower promises to make monthly payments of principal and interest of U.S. $ 982.74       , beginning on the 1st     day of September     , 2020    , and continuing thereafter on the same day of each succeeding month until principal and interest are paid in full.  The yearly rate of  3.500      % will remain in effect until principal and interest are paid in full.  If on August 1st, 2050             , (the "Maturity Date"), Borrower still owes amounts under the Note and the Security Instrument, as amended by this Agreement, Borrower will pay these amounts in full on the Maturity Date.

3.      If all or any part of the Property or any interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by the Security Instrument.

If Lender exercises this option, Lender shall give Borrower notice of acceleration.  The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by the Security Instrument.  If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by the Security Instrument without further notice or demand on Borrower.

4.      Borrower also will comply with all other covenants, agreements, and requirements of the Security Instrument, including without limitation, the Borrower's covenants and agreements to make all payments of taxes, insurance premiums, assessments, escrow items, impounds, and all other payments that Borrower is obligated to make under the Security Instrument; however, the following terms and provisions are forever canceled, null and void, as of the specified date in paragraph No. 1 above:

(a)      all terms and provisions of the Note and Security Instrument (if any) providing for, implementing, or relating to, any change or adjustment in the rate of interest payable under the Note; and

(b)      all terms and provisions of any adjustable rate rider, or other instrument or document that is affixed to, wholly or partially incorporated into, or is part of, the Note or Security Instrument and that contains any such terms and provisions as those referred to in (a) above.

Loan No.: ███████

5.      Borrower understands and agrees that:

(a)      All the rights and remedies, stipulations, and conditions contained in the Security Instrument relating to default in the making of payments under the Security Instrument shall also apply to default in the making of the modified payments hereunder.

(b)      All covenants, agreements, stipulations, and conditions in the Note and Security Instrument shall be and remain in full force and effect, except as herein modified, and none of the Borrower's obligations or liabilities under the Note and Security Instrument shall be diminished or released by any provisions hereof, nor shall this Agreement in any way impair, diminish, or affect any of Lender's rights under or remedies on the Note and Security Instrument, whether such rights or remedies arise thereunder or by operation of law. Also, all rights of recourse to which Lender is presently entitled against any property or any other persons in any way obligated for, or liable on, the Note and Security Instrument are expressly reserved by Lender.

(c)      Nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the Note and Security Instrument.

(d)      All costs and expenses incurred by Lender in connection with this Agreement, including recording fees, title examination, and attorney's fees, shall be paid by the Borrower and shall be secured by the Security Instrument, unless stipulated otherwise by Lender.

(e)      Borrower agrees to make and execute such other documents or papers as may be necessary or required to effectuate the terms and conditions of this Agreement which, if approved and accepted by Lender, shall bind and inure to the heirs, executors, administrators, and assigns of the Borrower.

(f)      Borrower authorizes Lender, and Lender's successors and assigns, to share Borrower  information including, but not limited to (i) name, address, and telephone number, (ii) Social Security Number, (iii) credit score, (iv) income, (v) payment history, (vi) account balances and activity, including information about any modification or foreclosure relief programs, with Third Parties that can assist Lender and Borrower in obtaining a foreclosure prevention alternative, or otherwise provide support services related to Borrower's  loan. For purposes of this section, Third Parties include a counseling agency, state or local Housing Finance Agency or similar entity, any insurer, guarantor, or servicer that insures, guarantees, or services Borrower's loan or any other mortgage loan secured by the Property on which Borrower is obligated, or to any companies that perform support services to them in connection with Borrower's loan.

Borrower consents to being contacted by Lender or Third Parties concerning mortgage assistance relating to Borrower's loan including the trial period plan to modify Borrower's loan, at any telephone number, including mobile telephone number, or email address Borrower has provided to Lender or Third Parties.

By checking this box, Borrower also consents to being contacted by text messaging❑.

(g)      "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as nominee for Lender and Lender's successors and assigns. MERS is the Mortgagee of record under the Security Instrument and this Agreement. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

6.      If applicable, by this paragraph, Lender is notifying Borrower that any prior waiver by Lender of Borrower's obligations to pay to Lender Funds for any or all Escrow Items is hereby revoked, and Borrower has been advised of the amount needed to fully fund the Escrow Items.

7.      Borrower will pay to Lender on the day payments are due under the Loan Documents as amended by this Agreement, until the Loan is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over the Mortgage as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under the Loan Documents; (d) mortgage insurance premiums, if any, or any sums payable to Lender in lieu of the payment of mortgage insurance premiums in accordance with the Loan Documents; and (e) any community association dues, fees, and assessments that Lender requires to be escrowed. These items are called "Escrow Items." Borrower shall promptly furnish to Lender all notices of amounts to be paid under this paragraph. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been

Loan No.: ▬▬▬▬

waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment·within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in the Loan Documents, as the phrase "covenant and agreement" is used in the Loan Documents. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under the Loan Documents and this Agreement and pay such amount and Borrower shall then be obligated to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with the Loan Documents, and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this paragraph.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under the Real Estate Settlement Procedures Act ("RESPA"), and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. Unless an agreement is made in writing or applicable law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Lender and Borrower can agree in writing, however, that interest shall be paid on the Funds. Lender shall provide Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower  shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by the Loan Documents, Lender shall promptly refund Borrower any Funds held by Lender.

Loan No.: ▮▮▮▮▮▮

**7-19-2020**
_____
Date

**7-19-2020**
_____
Date

_____
Date

_____
Date

_____(Seal)
**MADELAINE DIAZ**                    —Borrower

_____(Seal)
**ELIZABETH CABRERA**                 —Borrower

_____(Seal)
                                      —Borrower

_____(Seal)
                                      —Borrower

## BORROWER ACKNOWLEDGMENT

State of **Florida**                              §
                                                  §
County of **Miami Dade**                          §
                                                  §

    The foregoing instrument was acknowledged before me by means of ☒ physical presence or ❍ online notarization this **July 19, 2020** [date], by MADELAINE DIAZ and ELIZABETH CABRERA

                                                                      *[name of person acknowledging]*,
who is personally known to me or who has produced **FL Drivers License** *[type of identification]* as identification.

                              _____
                              Signature of Person Taking Acknowledgment

                              **Liudmila Gonzalez**
                              Name Typed, Printed or Stamped

                              Notary Public
                              Title or Rank

                              _____
                              Serial Number, if any

[Notary seal:]
LIUDMILA GONZALEZ
Notary Public - State of Florida
Commission # GG 024519
My Comm. Expires Aug 25, 2020

Loan No.: ▓▓▓▓

_8/12/2020_
-Date

Freedom Mortgage Corporation
-Lender

By: _(signature)_

Printed/Typed Name: _JAMI MILLER_

Its: _Closer_

# LENDER ACKNOWLEDGMENT

State of     Indiana              §
                                 §
County of    Hamilton            §

The foregoing instrument was acknowledged before me by means of ☑ physical presence or ⊙ online notarization this _August 12 2020_ *[date]*, by _Jami Miller_ ,

_Closer_
*[name of officer or agent, title of officer or agents]* of    Freedom Mortgage Corporation

on behalf of said entity.
He/She is personally known to me or has produced _Personally Known_
*[type of identification]* as identification.

_(I. Bey)_
Signature of Person Taking Acknowledgment

_I. Bey_
Name Typed, Printed or Stamped

Notary Public
Title or Rank

Serial Number, if any

I. BEY
Notary Public, State of Indiana
SEAL
Commission Number NP0724630
My Commission Expires
January 20, 2028

ACKNOWLEDGMENT (FLORIDA)                                        Page 6 of 7

Loan No.: ████████

_8/12/2020_
-Date

Mortgage Electronic Registration Systems, Inc.
as nominee for Lender, its successors and      -MERS
assigns

By: _____

Printed/Typed Name: _JAMI MILLER_

Its: _Assistant Secretary_

# MERS ACKNOWLEDGMENT

State of      Indiana                    §
                                        §
County of     Hamilton                   §

The foregoing instrument was acknowledged before me by means of ☐ physical presence or ☑ online notarization this _August 12  2020_ [date], by _Jami Miller_,
Assistant Secretary of Mortgage Electronic Registration Systems, Inc., Mortgagee, on behalf of said entity. They are personally known to me or has produced _____

_[type of identification]_ as identification.

(Seal)

_I. Bey_
Notary Signature
Printed/Typed Name: _I. Bey_

Notary Public, State of _Indiana_

My Commission Expires: _01-20-2028_

I. BEY
Notary Public, State of Indiana
Commission Number NP0724630
My Commission Expires
January 20, 2028

---

**ACKNOWLEDGMENT (FLORIDA)**                                          **Page 7 of 7**

**EXHIBIT "A"**

Lot 46, Block 2, of BEL AIR SUBDIVISION, according to the Plat thereof, as recorded in Plat Book
142, Page 100, of the Public Records of Miami-Dade County, Florida.

A.P.N. #:

**EXHIBIT A**

**Payment Due Detail**

| | Due Date | P & I | Escrow | Credit Insurance | Payment Amount | Adjust | Filed Amount | Pmt Md |
|---|---|---|---|---|---|---|---|---|
| ☐ | 08/01/21 | 982.74 | 1386.54 | 0.00 | 2369.28 | 0.00 | 2369.28 | N |
| ☐ | 09/01/21 | 982.74 | 1386.54 | 0.00 | 2369.28 | 0.00 | 2369.28 | N |
| ☐ | 10/01/21 | 982.74 | 1224.92 | 0.00 | 2207.66 | 0.00 | 2207.66 | N |
| ☐ | 11/01/21 | 982.74 | 1224.92 | 0.00 | 2207.66 | 0.00 | 2207.66 | N |
| ☐ | 12/01/21 | 982.74 | 1224.92 | 0.00 | 2207.66 | 0.00 | 2207.66 | N |
| ☐ | 01/01/22 | 982.74 | 1224.92 | 0.00 | 2207.66 | 0.00 | 2207.66 | N |
| ☐ | 02/01/22 | 982.74 | 1720.95 | 0.00 | 2703.69 | 0.00 | 2703.69 | N |
| ☐ | 03/01/22 | 982.74 | 1720.95 | 0.00 | 2703.69 | 0.00 | 2703.69 | N |
| ☐ | 04/01/22 | 982.74 | 1720.95 | 0.00 | 2703.69 | 0.00 | 2703.69 | N |
| ☐ | 05/01/22 | 982.74 | 1720.95 | 0.00 | 2703.69 | 0.00 | 2703.69 | N |

**Payment Due Detail**

| | Due Date | P & I | Escrow | Credit Insurance | Payment Amount | Adjust | Filed Amount | Pmt Md |
|---|---|---|---|---|---|---|---|---|
| ☐ | 06/01/22 | 982.74 | 1720.95 | 0.00 | 2703.69 | 0.00 | 2703.69 | N |
| ☐ | 07/01/22 | 982.74 | 1720.95 | 0.00 | 2703.69 | 0.00 | 2703.69 | N |
| ☐ | 08/01/22 | 982.74 | 1720.95 | 0.00 | 2703.69 | 0.00 | 2703.69 | N |
| ☐ | 09/01/22 | 982.74 | 1720.95 | 0.00 | 2703.69 | 0.00 | 2703.69 | N |
| ☐ | 00/00/00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | |
| ☐ | 00/00/00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | |
| ☐ | 00/00/00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | |
| ☐ | 00/00/00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | |
| ☐ | 00/00/00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | |
| ☐ | 00/00/00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | |

**Calc Payment Due Total**

| | Payment Amount | Adjust | Filed Amount |
|---|---|---|---|
| Payment Total | 35198.72 | 0.00 | 35198.72 |



# OFFICE OF THE PROPERTY APPRAISER

## Detailed Report

## EXHIBIT B

Generated On : 9/15/2022

### Property Information

| Property Information | |
|---|---|
| Folio: | ███████████ |
| Property Address: | 12373 NW 98 AVE<br>Hialeah Gardens, FL  33018-2957 |
| Owner | MADELAINE DIAZ |
| Mailing Address | 12373 NW 98 AVE<br>HIALEAH GARDENS, FL 33018 USA |
| PA Primary Zone | 0103 MODIFIED SINGLE FAM RES |
| Primary Land Use | 0101 RESIDENTIAL - SINGLE FAMILY : 1 UNIT |
| Beds / Baths / Half | 4 / 2 / 1 |
| Floors | 2 |
| Living Units | 1 |
| Actual Area | 2,523 Sq.Ft |
| Living Area | 1,724 Sq.Ft |
| Adjusted Area | 1,903 Sq.Ft |
| Lot Size | 3,391 Sq.Ft |
| Year Built | Multiple (See Building Info.) |



### Taxable Value Information

| | 2022 | 2021 | 2020 |
|---|---|---|---|
| **County** | | | |
| Exemption Value | $50,000 | $50,000 | $50,000 |
| Taxable Value | $236,927 | $228,570 | $224,724 |
| **School Board** | | | |
| Exemption Value | $25,000 | $25,000 | $25,000 |
| Taxable Value | $261,927 | $253,570 | $249,724 |
| **City** | | | |
| Exemption Value | $50,000 | $50,000 | $50,000 |
| Taxable Value | $236,927 | $228,570 | $224,724 |
| **Regional** | | | |
| Exemption Value | $50,000 | $50,000 | $50,000 |
| Taxable Value | $236,927 | $228,570 | $224,724 |

### Assessment Information

| Year | 2022 | 2021 | 2020 |
|---|---|---|---|
| Land Value | $150,188 | $114,714 | $108,519 |
| Building Value | $230,219 | $166,045 | $168,252 |
| XF Value | $1,317 | $1,334 | $1,349 |
| Market Value | $381,724 | $282,093 | $278,120 |
| Assessed Value | $286,927 | $278,570 | $274,724 |

### Benefits Information

| Benefit | Type | 2022 | 2021 | 2020 |
|---|---|---|---|---|
| Save Our Homes Cap | Assessment Reduction | $94,797 | $3,523 | $3,396 |
| Homestead | Exemption | $25,000 | $25,000 | $25,000 |
| Second Homestead | Exemption | $25,000 | $25,000 | $25,000 |

Note: Not all benefits are applicable to all Taxable Values (i.e. County, School Board, City, Regional).

The Office of the Property Appraiser is continually editing and updating the tax roll. This website may not reflect the most current information on record. The Property Appraiser and Miami-Dade County assumes no liability, see full disclaimer and User Agreement at http://www.miamidade.gov/info/disclaimer.asp

Version:

# OFFICE OF THE PROPERTY APPRAISER

Generated On : 9/15/2022

**Property Information**

██████████████

**Property Address:**   12373 NW 98 AVE

# Roll Year **2022** Land, Building and Extra-Feature Details

| Land Information | | | | | |
|---|---|---|---|---|---|
| Land Use | Muni Zone | PA Zone | Unit Type | Units | Calc Value |
| GENERAL | R-1P (MOR) | 0103 | Square Ft. | 3,000.00 | $141,000 |
| GENERAL | R-1P (MOR) | 0103 | Square Ft. | 391.00 | $9,188 |

| Building Information | | | | | | |
|---|---|---|---|---|---|---|
| Building Number | Sub Area | Year Built | Actual Sq.Ft. | Living Sq.Ft. | Adj Sq.Ft. | Calc Value |
| 1 | 1 | 1994 | 2,088 | 1,724 | 1,758 | $209,184 |
| 1 | 2 | 2010 | 435 | 0 | 145 | $21,035 |

| Extra Features | | | |
|---|---|---|---|
| Description | Year Built | Units | Calc Value |
| Patio - Concrete Slab | 2010 | 188 | $669 |
| Wood Fence | 1994 | 54 | $648 |

The Office of the Property Appraiser is continually editing and updating the tax roll. This website may not reflect the most current information on record. The Property Appraiser and Miami-Dade County assumes no liability, see full disclaimer and User Agreement at http://www.miamidade.gov/info/disclaimer.asp

Version:

# OFFICE OF THE PROPERTY APPRAISER

Generated On : 9/15/2022

**Property Information**

▬▬▬▬▬▬▬▬▬▬

**Property Address:**   12373 NW 98 AVE

## Roll Year **2021** Land, Building and Extra-Feature Details

| Land Information | | | | | |
|---|---|---|---|---|---|
| Land Use | Muni Zone | PA Zone | Unit Type | Units | Calc Value |
| GENERAL | R-1P (MOR) | 0103 | Square Ft. | 3,000.00 | $111,000 |
| GENERAL | R-1P (MOR) | 0103 | Square Ft. | 391.00 | $3,714 |

| Building Information | | | | | | |
|---|---|---|---|---|---|---|
| Building Number | Sub Area | Year Built | Actual Sq.Ft. | Living Sq.Ft. | Adj Sq.Ft. | Calc Value |
| 1 | 1 | 1994 | 2,088 | 1,724 | 1,758 | $150,907 |
| 1 | 2 | 2010 | 435 | 0 | 145 | $15,138 |

| Extra Features | | | |
|---|---|---|---|
| Description | Year Built | Units | Calc Value |
| Patio - Concrete Slab | 2010 | 188 | $677 |
| Wood Fence | 1994 | 54 | $657 |

The Office of the Property Appraiser is continually editing and updating the tax roll. This website may not reflect the most current information on record. The Property Appraiser and Miami-Dade County assumes no liability, see full disclaimer and User Agreement at http://www.miamidade.gov/info/disclaimer.asp

Version:

# OFFICE OF THE PROPERTY APPRAISER

Generated On : 9/15/2022

**Property Information**

**Property Address:**   12373 NW 98 AVE Hialeah Gardens, FL  33018-2957

## Roll Year **2020** Land, Building and Extra-Feature Details

### Land Information

| Land Use | Muni Zone | PA Zone | Unit Type | Units | Calc Value |
|---|---|---|---|---|---|
| GENERAL | R-1P (MOR) | 0103 | Square Ft. | 3,000.00 | $105,000 |
| GENERAL | R-1P (MOR) | 0103 | Square Ft. | 391.00 | $3,519 |

### Building Information

| Building Number | Sub Area | Year Built | Actual Sq.Ft. | Living Sq.Ft. | Adj Sq.Ft. | Calc Value |
|---|---|---|---|---|---|---|
| 1 | 1 | 1994 | 2,088 | 1,724 | 1,758 | $152,946 |
| 1 | 2 | 2010 | 435 | 0 | 145 | $15,306 |

### Extra Features

| Description | Year Built | Units | Calc Value |
|---|---|---|---|
| Patio - Concrete Slab | 2010 | 188 | $684 |
| Wood Fence | 1994 | 54 | $665 |

The Office of the Property Appraiser is continually editing and updating the tax roll. This website may not reflect the most current information on record. The Property Appraiser and Miami-Dade County assumes no liability, see full disclaimer and User Agreement at http://www.miamidade.gov/info/disclaimer.asp

Version:

# OFFICE OF THE PROPERTY APPRAISER

Generated On : 9/15/2022

**Property Information**

███████████

**Property Address:**   12373 NW 98 AVE

| Full Legal Description |
|---|
| BEL-AIR SUB |
| PB 142-100 T-17791 |
| LOT 46 BLK 2 |
| LOT SIZE 3391 SQ FT |
| F/A/U 27-2029-001-0670 & 0680 |
| OR 18219-2931 0798 1 |

| Sales Information | | | |
|---|---|---|---|
| Previous Sale | Price | OR Book-Page | Qualification Description |
| 01/14/2020 | $100 | 31780-4282 | Corrective, tax or QCD; min consideration |
| 10/20/2017 | $320,000 | 30729-2888 | Qual by exam of deed |
| 07/01/1998 | $109,000 | 18219-2931 | Sales which are qualified |
| 08/01/1994 | $100,000 | 16491-0990 | Sales which are qualified |

The Office of the Property Appraiser is continually editing and updating the tax roll. This website may not reflect the most current information on record. The Property Appraiser and Miami-Dade County assumes no liability, see full disclaimer and User Agreement at http://www.miamidade.gov/info/disclaimer.asp

Version: